## AGREEMENT

This agreement is made as of the 12th day of January 2012 and is by and between KOLEL BETH YECHIEL MECHIL OF TARTIKOV, INC. ("Kolel"), on the one hand, and YLL IRREVOCABLE TRUST ("YLL"), MERIDIAN TRUST COMPANY, as Trustee of YLL Irrevocable Trust ("Meridian"), and KOCHAV S.A.R.L., a LUXEMBOURG S.A.R.L. ("Kochav" and together with YLL and Meridian collectively referred to as the "YLL Parties" and the YLL Parties together with Kolel are sometimes collectively referred to as the "Parties"), on the other hand (the "Agreement"). The terms and conditions of the Agreement are as follows it being agreed that fair and appropriate consideration has been exchanged by the Parties, in hand paid, and the Parties agree to the terms and conditions hereinafter set forth.

1. The Action, as defined below, and any and all claims, disputes, controversies and counterclaims of any type of nature between the Parties whether or not raised in the Action, as defined below, and which would, could or might have been made, raised or claimed in the action captioned Kolel Beth Yechiel Mechil of Tartikov, Inc. against YLL Irrevocable Trust, et al 11 Civ 7707, including the consolidated action of Sylvia Beilush *et al* v. Kochav S.A.R.L. *et al* (formerly No. 11 CV 8232), pending in the United States District Court, Southern District of New York before Judge Victor Marerro and Magistrate Judge Kevin Fox (the consolidated action is referred to as the "Action" and the District Court is defined as the "Court" for all purposes herein) as well as those related to, arising from or in connection with that certain March 15, 2011 Purchase and Sale Agreement by and between the Kolel and YLL (the "PSA") and each of the 44 Policies referenced in the PSA inclusive of Policy # BC7008990 issued by Companion Life Insurance Company on the life of Sy Hart (collectively, the "Disputes") shall be and hereby are irrevocably and unconditionally submitted to Rabbinical Arbitration (the "Arbitration") and to the rabbinical judges/arbitrators: Rabbi Alexander Grausz representing Kolel, Rabbi Moshe Bergman representing the YLL Parties and a neutral Rabbi Shlomo Zalman Kaufman (each, an Arbitrator, and together, the "Arbitration Panel"). If Rabbi Kaufman withdraws due to his incapacitation (i.e., due to serious illness), the Parties hereby designate Rabbi Chaim Malinowitz as the neutral Rabbi in the place and stead of Rabbi Kaufman and for all purposes in this Agreement whenever Rabbi Kaufman is mentioned. If Rabbi Kaufman is substituted for by Rabbi Malinowitz, Rabbi Malinowitz shall be the person in the place and stead of Rabbi Kaufman wherever Rabbi Kaufman is referred to or referenced. The Arbitration Panel shall reach a final, fully binding and non-appealable decision with regard to the Disputes (the "Final Decision"). It is the intention and desire of the Parties and the spirit and intent of this Agreement that the Arbitration Panel be the sole and exclusive judicial or administrative or other entity to make all decisions with regard to the Disputes and the Final Decision. The Parties acknowledge Rabbi Bergman has been attempting to negotiate a settlement between the Parties and Kolel does not object for any reason that Rabbi Bergman shall be a member of the Arbitration Panel. YLL does not object to Rabbi Grausz being a member of the Arbitration Panel. Neither Rabbi Bergman or Rabbi Grausz or Rabbi Kaufman [or Rabbi Malinowitz, if he does perform any services] or any Rabbinic advisor used by any Party may be subpoenaed or called as a witness at the Arbitration and each of the

{MG5640.DOCX}

1

foregoing Rabbi's shall be and hereby are held harmless for and in connection with the services they have and will provide in connection with this Agreement.

2. The Action shall be stayed for all purposes (the "Stay") until the Arbitration Panel reaches a Final Decision at which time, unless the Arbitration Panel orders otherwise, the Action shall be dismissed with prejudice promptly after the Final Decision is reached and there is the entry of a stipulation dismissing the Action with prejudice or an Order so ordered by the Court confirming the Final Decision. Notwithstanding the prior sentence, the Court shall retain exclusive jurisdiction of the Action to the extent required, if ever, to enforce any decision of the Arbitrators. The Stay shall encompass, *inter alia*, the Court rendering no decision with regard to any matter currently pending before it and all discovery proceedings being stayed including all subpoenas to non-parties. The Party who issued any subpoena to a non-party shall upon the execution of this Agreement immediately communicate orally and in writing to the non-party that the Action has been stayed and no action shall be or need be taken by the non-party with respect to the subpoena. Notwithstanding the above, the Arbitration Panel shall have the right to direct the issuance of subpoenas.

3. If a Party in good faith believes the Final Decision does not fully resolve the Disputes, as defined herein, the Arbitration Panel has the sole and exclusive power to decide whether the Arbitration Panel has fully resolved the matter. Moving the Court to compel the Arbitration Panel to render a decision shall be an additional remedy available as to whether there is a failure by the Arbitration Panel to render a Final Decision.

4. Stephen Friedman, Esq. ("SF"), on the one hand, and Kolel and Chaim Babad (collectively for purposes of this paragraph only "Kolel et al"), on the other hand, shall irrevocably submit any and all of their respective disputes, claims and controversies which could, would or might have been raised or made in any venue whatsoever, including but not limited to the matters arising from, related to or in connection with Kolel et al's letter to the disciplinary committee regarding the escrow funds referred to in the PSA, which letter is dated October 18, 2011, to the sole and exclusive jurisdiction of the Arbitration Panel under a separate standard bais din arbitration agreement, which the Parties as well as SF and Kolel et al consent to be heard contemporaneous with this Arbitration proceeding.

5. Sylvia Beilush, Leibush Frankel and the Frankel Purchasing Irrevocable Trust, on the one hand, and Kochav, on the other hand (the four preceding parties collectively referred to in this Paragraph as the "Beilush Parties") shall irrevocably and unconditionally submit any and all of their respective disputes, claims and controversies which could, would or might have been raised or made in any venue whatsoever, including but not limited to the matters arising from, related to or in connection with the action originally filed in the United States District Court for the Southern District of New York as <u>Sylvia Beilush and Leibush Frankel, Trustees of the Frankel Purchasing Irrevocable Trust, and the Frankel Purchasing Irrevocable Trust v. Kochav S.A.R.L., a Luxembourg S.A.R.L. and Wilmington Savings Fund</u>

{MG5640.DOCX}

Society, FSB, 11 Civ 8232 (VM) (KNF) (the "Beilush Proceeding") and subsequently consolidated for all pretrial purposes with the action originally filed as 11 Civ 7707, to the sole and exclusive jurisdiction of the Arbitration Panel under a separate bais din arbitration agreement, which the Beilush Parties consent to be heard contemporaneous with this Arbitration proceeding; provided, however, the Beilush Parties, including their respective representatives and attorneys, do not have to attend any sessions which deal exclusively with issues unrelated to the Beilush Proceeding. Further, at the discretion of the Arbitration Panel, the disputes, claims and controversies of the Beilush Proceeding may be decided subsequent to and not contemporaneous with the other matters being determined by the Arbitration Panel pursuant to this Agreement. The Arbitration Panel shall reach a final, fully binding and non-appealable decision with regard to the disputes, claims and controversies of the Beilush Proceeding.

6.  The YLL Parties hereby direct WILMINGTON SAVINGS FUND SOCIETY, FSB ("WSFS") and will execute all necessary documents to enable 43 of the policies at issue pursuant to the PSA and Policy # 157211243 issued by AXA Equitable Life Insurance Company on the life of Rose Frankel (the "Policies" a list of which is annexed hereto as **Exhibit A**) to be held by WSFS solely as a securities intermediary for Rabbi Kaufman (the "Escrow Agent"). It shall be the sole obligation of the Escrow Agent [for clarity purposes only if Rabbi Kaufman is not acting as the neutral arbitrator Rabbi Malinowitz shall be the Escrow Agent] to cause the transfer of the Policies, as directed by the Arbitration Panel back to the YLL Parties or to Kolel within four (4) business days of receipt of written instruction received by the Parties and the Escrow Agent from any two arbitrators of the Arbitration Panel (the "Transfer"). The Escrow Agent shall perform the Transfer immediately upon issuance of the written instruction referenced in the immediately foregoing sentence even if the Arbitration Panel's Final Decision or interim decision has not been confirmed and irrespective of action, if any, any Party takes with regard to the Final Decision. The Transfer shall be final and fully binding upon the Parties. The Parties represent, warrant and covenant that provided the Escrow Agent lawfully fulfills the sole obligation outlined in this Paragraph no Party shall commence any proceeding of any type of nature against or naming the Escrow Agent or WSFS as a party. If any Party violates the intent or spirit of the foregoing sentence or commences an action or proceeding naming the Escrow Agent or WSFS, that Party shall be required to pay the legal fees and expenses incurred by the Escrow Agent. To insure the payment of same immediately with the commencement of any such action or proceeding the Party commencing such action or proceeding shall promptly deposit with the Escrow Agent that sum of money determined by a majority of the members of the Arbitration Panel. This Paragraph and the Transfer provided for herein is not and does not constitute an agreement or understanding by the Parties that the YLL Parties have conceded to or agreed in any manner to any substantive claim made by Kolel in the Action. The Transfer provided for in this Paragraph is solely a required condition precedent as requested by Kolel to enable the Parties to move the Action from the Court to the bais din and Arbitration Panel. If no Final Decision is received by February 20, 2012 and it is determined by Rabbi Kaufman, or the substitute neutral arbitrator,

{MG5640.DOCX}

and conveyed in writing to all Parties, that the reason for the delay has been caused by acts of omission or commission by either Party, then the Policies shall be transferred to the Party determined by the Arbitration Panel who did not cause the delay.

7. The Transfer of the Policies to the Escrow Agent does not change the halachic status of the Policies.

8. If WSFS does not confirm in writing by January 13, 2012 that WSFS is holding the Policies solely as a securities intermediary for the Escrow Agent and that WSFS will transfer the Policies upon written instruction from the Escrow Agent pursuant to Paragraph 5 above, or if the joint stipulation concerning this Agreement submitted by the Parties to the Court (the "Stipulation") is not So Ordered by the Court, the Stay may be lifted by any Party making an application to the Court providing seven (7) days' written notice to all other Parties and the Court.

9. Contemporaneously with the execution of this Agreement by the Parties, Kolel shall deposit into an escrow account with the Escrow Agent the amount of $750,000 (the "Funds"). With respect to the Funds, it shall be the sole obligation of the Escrow Agent to transfer the Funds, as directed by the Arbitration Panel, back to the Kolel or to the YLL Parties within four (4) business days of receipt of written instruction received by the Parties and the Escrow Agent from any two arbitrators of the Arbitration Panel (the "Funds Transfer"). The Escrow Agent shall perform the Funds Transfer immediately upon issuance of written instruction referenced in the immediately foregoing sentence even if the Arbitration Panel's Final Decision or interim decision has not been confirmed and irrespective of action, if any, any Party takes with regard to the Final Decision. The Funds Transfer shall be final and fully binding upon the Parties. The Parties represent, warrant and covenant provided the Escrow Agent lawfully fulfills the sole obligation outlined in this Paragraph, no Party shall commence any action or proceeding of any type of nature against or naming the Escrow Agent as a party. If any Party violates the intent or spirit of the foregoing sentence or commences an action or proceeding naming the Escrow Agent that Party shall be required to pay the legal fees and expenses incurred by the Escrow Agent. To insure the payment of same immediately with the commencement of any such action or proceeding the Party commencing such action or proceeding shall promptly deposit with the Escrow Agent that sum of money determined by a majority of the members of the Arbitration Panel. This Paragraph and the Funds Transfer provided for herein is not and does not constitute an agreement or understanding by the Parties that the Kolel has conceded to or agreed in any manner to any substantive claim made by the YLL Parties in the Action. The Funds Transfer provided for in this Paragraph is solely a required condition precedent as requested by the YLL Parties to enable the Parties to move the Action from the Court to the bais din and Arbitration Panel. If no Final Decision is received by February 20, 2012 and it is determined by Rabbi Kaufman, or the substitute neutral arbitrator, and conveyed in writing to all Parties, that the reason for the delay has been caused by acts of omission or commission by either Party

then the Funds shall be transferred to the Party determined by the Arbitration Panel who did not cause the delay.

10. The deposit of the Funds with the Escrow Agent does not change the halachic status of the Funds.

11. YLL represents and warrants that the person executing this Agreement on YLL's behalf has the authority to bind YLL and its affiliates and each of their respective agents, designees, trustee(s), and legal representatives, and once executed, this Agreement shall be final and binding upon YLL and its affiliates and each of their respective agents, designees, trustee(s), and legal representatives. The effect of this representation and warranty by YLL shall be governed by and determined under the laws of the State of New York as if YLL was a New York Trust.

12. Meridian, as Trustee of YLL, as nominee, represents and warrants that the person executing this Agreement on Meridian's behalf has the authority to bind Meridian as Trustee of YLL, as nominee, and once executed, this Agreement shall be final and binding upon Meridian, as Trustee of YLL, as nominee.

13. Kochav represents and warrants that the person executing this Agreement on Kochav's behalf has the authority to bind Kochav and its affiliates and each of their respective officers, directors, shareholders, agents, designees and legal representatives to the terms of this Agreement, and once executed, this Agreement shall be final and binding upon Kochav and its affiliates and each of their respective officers, directors, shareholders, agents, designees and legal representatives.

14. Kolel represents and warrants that the person executing this Agreement on Kolel's behalf has the authority to bind Kolel and its affiliates and each of their respective officers, directors, shareholders, agents, designees and legal representatives to the terms of this Agreement, and once executed, this Agreement shall be final and binding upon Kolel and its affiliates and each of their respective officers, directors, shareholders, agents, designees and legal representatives.

15. Each of Kolel and its affiliates and each of their respective officers, directors, shareholders, accountants, agents and legal representatives (for purposes of this Paragraph, "Kolel" shall mean to include Kolel and its affiliates and each of their respective employees, officers, directors, shareholders, agents, accountants, designees and legal representatives of Kolel) and YLL et al each covenant they will not contact at any time, directly or indirectly, any governmental or administrative agency (collectively, the "Entities") with regard to the Disputes or the Action or the Arbitration for any reason whatsoever including but limited to providing the Entities with documents and/or interviews without the written consent of the Arbitration Panel first obtained. Nothing in this Paragraph shall require or condone the violation of the laws of the United States or any State or the rules of any of the Entities. For purposes of this Paragraph "YLL et al" shall mean to include the YLL Parties and each of their affiliates and each of their respective employees, officers, directors, shareholders, agents, accountants, designees, trustees, and legal

representatives. This Paragraph shall survive the rendering of a Final Decision by the Arbitration Panel which will retain jurisdiction with the regard to this paragraph even after it has rendered a Final Decision. In the event there is a violation or breach of this Paragraph, the Party who breached this Paragraph shall be responsible for the reasonable and necessary attorneys fees, costs and expenses as well as the value of attorney time incurred by the person, persons or entity who is forced to expend any such efforts as a result of the violation or breach (collectively, the "Fees and Expenses"). The amount of the Fees and Expenses shall be determined by the Arbitration Panel under the same rules as set forth in this Agreement.

16. This Agreement is not effective until such time as it has been executed by all Parties and signatories hereto, WSFS has confirmed in writing that it is holding the Policies solely as a securities intermediary for the Escrow Agent and it will transfer the Policies upon written instruction from the Escrow Agent pursuant to Paragraph 5 above, and an agreed upon stipulation concerning this Agreement is jointly submitted by the Parties to the Court. This Agreement shall be void if the terms of this Paragraph are not fully complied with by January 13, 2012, except that if WSFS has not confirmed the above in writing by January 13, 2012, the Parties will work jointly to secure WSFS' confirmation by January 17, 2012 and if WSFS' confirmation is not obtained in writing by January 17, 2012, this Agreement shall be void.

17. The Parties waive their respective procedural rights under the CPLR, including rights under CPLR §7506, the Federal Arbitration Act and the Federal Rules of Civil Procedure, except for the right to counsel.

18. The hearings shall take place before the Arbitration Panel as soon as possible or upon two (2) business days' notice after receipt of written notice from the Arbitration Panel, whichever is earlier, and shall be concluded on or before two weeks from the date of commencement and in no event later than February 6, 2012. The Arbitration Panel shall be fully empowered to enter a default finding and a default award against any Party failing to appear at any of the hearings scheduled in the foregoing sentence. For purposes of this Agreement, a failure to appear shall be defined as the party not appearing at a hearing by at least one of the following: (a) in person, or (b) through any other representative, including but not limited to any attorney/non-attorney representing the party. The Arbitration Panel shall issue its Final Decision within ten (10) business days following the close of the hearings. It is the intention and desire of the Parties to cause the hearings to occur as soon as possible and subject to the availability of the members of the Arbitration Panel to commence no later than January 23, 2012. It shall be the sole remedy of a Party if the Arbitration has not commenced by January 24, 2012 or concluded by February 6, 2012 to move to compel before the Court that the Arbitration Panel immediately commence or conclude the Arbitration.

19. The YLL Parties and Kolel will each pay 50% of the fees of the members of the Arbitration Panel.

20. The arbitrator selected by each party [e.g., Rabbi Bergman and Rabbi Grausz] shall not be deemed a neutral.

21. The Parties represent, warrant and covenant this Agreement shall not be submitted, quoted in any document [including but not limited to pleadings, affidavits, declarations, certifications, memoranda of law, letters, e mails, etc.] or referred to in any manner whatsoever to any court of law including but not limited to the Court for any purpose whatsoever and at any time whatsoever other than to confirm or oppose the confirmation of any decision of the Arbitrator Panel or the arbitrator[s], compel the Arbitration to be commenced or concluded, or compel the Arbitration Panel to render a Final Decision.

22. The Agreement is not for the benefit of or use by any person, party or entity not a party to this Agreement.

23. If a party Arbitrator is unable or unwilling or does not serve or does not appear at an arbitration hearing for any reason other than due to an emergency or incapacity for health reasons, the Neutral Arbitrator and the remaining party Arbitrator shall continue the Arbitration and render a Final Decision with only two arbitrators. For the purpose of this Paragraph the validity of the emergency or incapacity for health reasons shall be determined by the neutral arbitrator. In the event of incapacity for health reasons, the Party whose arbitrator has been incapacitated must within three (3) days appoint in writing a replacement arbitrator. Failure, if any, to appoint a replacement arbitrator shall not result in a continuance of the Arbitration and the remaining two arbitrators shall be empowered to reach a Final Decision.

24. The Arbitration Panel has the right to issue interim or partial relief, as needed if at all, during the pendency of the Arbitration.

25. It is acknowledged and agreed that:
    a. the Arbitration Panel shall reach each and any of its decisions based upon Din Torah, compromise, or any other manner it wishes to in order to reach a decision;
    b. no transcript of the proceeding is needed unless the Arbitration Panel decides to engage the services of a stenographer the cost of which shall be borne equally between the YLL Parties and Kolel;
    c. the hearings may be conducted on Sundays and other legal holidays;
    d. any decision reached by the Arbitration Panel shall be in writing, executed by at least two of the arbitrators of the Arbitration Panel and need not be notarized or verified;
    e. the Parties may be represented by attorneys and/or advisors at the Arbitration Panel hearings;
    f. as it is the intent of the Parties to cause the hearings to be concluded as soon as possible, the Arbitration Panel shall have the right to hear testimony or argument by any Party or witness without the adverse Party being present if the

non-attending Party was provided with 48 hours' notice of the time, date and place of the hearing by the neutral arbitrator to the party arbitrators. It is the obligation of the party arbitrators to inform the respective attorneys for the Parties of such time, date and place of the hearing;

g. if after the issuance of any decision a dispute arises between the Parties with regard to the interpretation of such decision or if a Party seeks to move for re-argument solely due to a claim of judicial error or new evidence not available at the time of the hearings, the Parties hereby provide sole and exclusive jurisdiction of that interpretation or re-argument to the Arbitration Panel for all purposes;

h. any decision including but not limited to the Final Decision is final and binding upon the Parties and is non-appealable in any religious Court or any secular Court;

i. to the extent there is any discrepancy between this Agreement and the Stipulation, the terms of the Agreement shall be binding upon the Parties and the signatories hereto;

j. This Agreement may be executed in counterparts, and each counterpart shall be deemed an original, notwithstanding that all Parties and signatories are not signatories to the same counterpart, and all counterparts together shall be taken as a whole and constitute one and the same instrument;

k. Facsimile or e-mailed or pdf signatures shall be deemed to be original signatures for all purposes; and

l. the Parties acknowledge that all halakhic requirements to effectuate this Agreement were met.

*[The remainder of this page is intentionally left blank]*

{MG5640.DOCX}

KOLEL BETH YECHIEL MECHIL OF TARTIKOV, INC.

By: *Chaim Babad*

Title: *President*


YLL IRREVOCABLE TRUST

By: _____

Title: _____


MERIDIAN TRUST COMPANY
as Trustee of YLL Irrevocable Trust, as nominee

By: _____

Title: _____


KOCHAV S.A.R.L., a LUXEMBOURG S.A.R.L.

By: _____

Title: _____


Signature page 1 to Agreement

{5641.DOC}

KOLEL BETH YECHIEL MECHIL OF TARTIKOV, INC.

By: _____

Title: _____

YLL IRREVOCABLE TRUST

By: _ERNEST DOVER, TRACEY WILLIAMS-MORTON_

Title: _FOR MERIDIAN TRUST COMPANY LIMITED, TRUSTEE_

MERIDIAN TRUST COMPANY
as Trustee of YLL Irrevocable Trust, as nominee

By: _ERNEST DOVER, TRACEY WILLIAMS-MORTON_

Title: _AUTHORISED SIGNATORIES_

KOCHAV S.A.R.L., a LUXEMBOURG S.A.R.L.

By: _____

Title: _____

{5641.DOC}                Signature page 1 to Agreement

KOLEL BETH YECHIEL MECHIL OF TARTIKOV, INC.

By: _____

Title: _____

YLL IRREVOCABLE TRUST

By: _____

Title: _____

MERIDIAN TRUST COMPANY
as Trustee of YLL Irrevocable Trust, as nominee

By: _____

Title: _____

KOCHAV S.A.R.L., a LUXEMBOURG S.A.R.L.

By: _ALBERTO MORANDINI_  _VALÉRIE EMOND_

Title: _MANAGER_  MANAGER

{5641.DOC}  Signature page 1 to Agreement

LIPSIUS-BENHAIM LAW, LLC
*Attorneys for Kolel*

By: _____
Ira S. Lipsius
80-02 Kew Gardens Rd. Suite 1030
Kew Gardens, NY 11415

HOFFINGER STERN & ROSS, LLP
*Attorneys for YLL, Meridian and Kochav*

By: _____
Stephen R. Stern
150 East 58th Street, 19th floor
New York, NY 10155

{5641.DOC}

Signature page 2 to Agreement

As to Paragraph 4 only:

_____
Stephen Friedman

_____
Chaim Babad

As to Paragraph 4 only:

_____
Stephen Friedman

_____
Chaim Babad

As to Paragraph 5 only:

_____
Sylvia Beilush, Trustee of the
Frankel Purchasing Irrevocable Trust

_____
Leibush Frankel, Trustee of the
Frankel Purchasing Irrevocable Trust

FRANKEL PURCHASING IRREVOCABLE TRUST

By: _____
  Sylvia Beilush

Title: Trustee

By: _____
  Leibush Frankel

Title: Trustee

As to Paragraph 5 only:

_____
Sylvia Beilush

_____
Leibush Frankel

FRANKEL PURCHASING IRREVOCABLE TRUST

By: _____
     Sylvia Beilush

Title: Trustee

By: _____
     Leibush Frankel

Title: Trustee

KOCHAV S.A.R.L., a LUXEMBOURG S.A.R.L.

By: _ALBERTO MORANDINI_  VALERIE EMOND

Title: _MANAGER_  MANAGER

{5641.DOC}　　　　　　　　　　Signature page 4 to Agreement

**EXHIBIT A**

|    | Insured | Company | Face Amount | Policy Date | Policy # |
|----|---------|---------|-------------|-------------|----------|
| 1  | Pearl Babad | AIG | $5,800,000.00 | 3/3/2006 | U10033133Y |
| 2  | Chaskel Wagschal | AXA | $5,000,000.00 | 5/4/2006 | 156205287 |
| 3  | David Rottenstein | AXA | $20,000,000.00 | 12/21/2006 | 156231135 |
| 4  | Margaret Friedman | AXA | $5,000,000.00 | 5/22/2006 | 156202956 |
| 5  | Bernard Steimetz | ING | $5,000,000.00 | 4/13/2006 | 2045949H |
| 6  | Chaskel Steuer | John Hancock | $5,000,000.00 | 6/23/2005 | UL1418685 |
| 7  | Chaskel Steuer | John Hancock | $5,000,000.00 | 6/23/2005 | UL1418684 |
| 8  | Chaskel Steuer | John Hancock | $5,000,000.00 | 7/23/2005 | UL1419841 |
| 9  | Chaskel Steuer | John Hancock | $5,000,000.00 | 7/23/2005 | UL1419840 |
| 10 | Chaskel Wagschal | John Hancock | $3,000,000.00 | 1/7/2008 | 93856649 |
| 11 | Chaskel Wagschal | John Hancock | $20,000,000.00 | 6/2/2006 | 1210647 |
| 12 | Edith Goldstein | John Hancock | $10,000,000.00 | 12/1/2005 | 1418846 |
| 13 | Esther Neuhauser | John Hancock | $20,000,000.00 | 1/21/2005 | 59594044 |
| 14 | Gizella Smilowitz | John Hancock | $10,000,000.00 | 6/21/2005 | 1418673 |
| 15 | Lenard Halpert | John Hancock | $5,000,000.00 | 5/9/2005 | UL1417299 |
| 16 | Max Schwartz | John Hancock | $10,000,000.00 | 5/17/2006 | 1203689 |
| 17 | Michel Roth | John Hancock | $5,000,000.00 | 6/23/2005 | 59683052 |
| 18 | Michel Roth | John Hancock | $5,000,000.00 | 6/23/2005 | 59685859 |
| 19 | Michel Roth | John Hancock | $5,000,000.00 | 6/23/2005 | 59683953 |
| 20 | Nuchem Horowitz | John Hancock | $20,000,000.00 | 4/15/2008 | 93842961 |
| 21 | Olga Hirsh | John Hancock | $10,000,000.00 | 12/9/2005 | UL1421759 |
| 22 | Alex Bienenstock | LBL | $5,000,000.00 | 6/12/2008 | 01N1386749 |
| 23 | Herman Einhorn | LBL | $5,000,000.00 | 12/21/2007 | 01N1379764 |
| 24 | Adolphe Blau | Lincoln | $20,000,000.00 | 2/21/2006 | 7226224 |
| 25 | Edith Goldstein | Lincoln | $10,000,000.00 | 11/15/2005 | 7216047 |
| 26 | Erno Friedman | Lincoln | $5,000,000.00 | 5/27/2006 | 7302660 |
| 27 | Pearl Babad | Lincoln | $10,000,000.00 | 3/28/2006 | 7225625 |
| 28 | Pearl Babad | Mass Mutual | $5,000,000.00 | 5/22/2006 | 15610152 |
| 29 | Pinter | Mass Mutual | $7,000,000.00 | 12/5/2006 | 15615398 |
| 30 | Isaac Meisels | Met Life | $10,000,000.00 | 10/18/2007 | 207195003USU |
| 31 | Isaac Meisels | Met Life | $10,000,000.00 | 11/5/2007 | 207244073USU |
| 32 | Chaskel Wagschal | NY Life | $7,180,000.00 | 1/27/2006 | 56734747 |
| 33 | Lenard Halpert | NY Life | $5,000,000.00 | 3/5/2005 | 62932775 |
| 34 | Pearl Babad | NY Life | $7,250,000.00 | 1/28/2006 | 56734753 |
| 35 | Victor Malka | NY Life | $5,000,000.00 | 9/16/2005 | 56734508 |
| 36 | Anna einhorn | Phoenix | $5,000,000.00 | 12/18/2007 | 97305020 |
| 37 | Chaskel Wagschal | Phoenix | $5,000,000.00 | 9/7/2006 | 97400013 |
| 38 | Alex Bienenstock | Principal Life | $10,000,000.00 | 5/1/2008 | 6093147 |

**EXHIBIT A**

|    | Insured           | Company        | Face Amount     | Policy Date | Policy #    |
|----|-------------------|----------------|-----------------|-------------|-------------|
| 39 | Chaskel Wagschal  | Principal Life | $2,792,800.00   | 8/1/2004    | 6016885     |
| 40 | Adolphe Blau      | Sun Life       | $18,000,000.00  | 7/15/2006   | 20135011    |
| 41 | Chaskel Steuer    | Travelers      | $5,000,000.00   | 7/28/2005   | 7466113     |
| 42 | Alex Bienenstock  | Union Central  | $5,000,000.00   | 4/25/2008   | U000042887  |
| 43 | Herman Einhorn    | Union Central  | $5,000,000.00   | 1/11/2008   | U000040931  |
| 44 | Rose Frankel      | AXA Equitable  | $10,000,000.00  |             | 157211243   |